UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

AVERY TAYLOR,              ) 1:13CV1417
                                )
        Petitioner       )
                                )
        v.                ) JUDGE DAN AARON POLSTER
                                ) (Mag. Judge Kenneth S. Mchargh)
                                )
ED SHELDON,              )
        Warden,         )
                                )
        Respondent    ) REPORT AND
                                ) <u>RECOMMENDATION</u>

McHARGH, MAG. JUDGE

The petitioner Avery Taylor ("Taylor") filed a petition pro se for a writ of
habeas corpus arising out of his 2010 conviction in the Lorain County (Ohio) Court
of Common Pleas for felonious assault, receiving stolen property, and participating
in a criminal gang.  (Doc. 1.)

In his petition, Taylor raises six grounds for relief:

1.  A trial court's abuse of discretion in denying a motion for mistrial
violates the constitutional guarantee to an impartial jury as provided
by the 6th Amendment to the United States Constitution.

2.  A conviction absent the presentation of sufficient evidence and/or
proof beyond a reasonable doubt violates the constitutional guarantee
to not be deprived of *** liberty *** without due process, as provided
by the 5th & 14th Amendments to the United States Constitution.

3.  The trial court's allowance of the state to proceed with an
indictment that does not provide adequate notice violates the
constitutional guarantee to not be deprived of *** liberty *** without

due process, as provided by the 6th & 14th Amendments to the United States Constitution.

4.  A trial court's abuse of discretion in allowing evidence of a murder case that was dismissed violates the constitutional guarantee to not be deprived of *** liberty *** without due process, as provided by the 5th & 14th Amendments to the United States Constitution.

5. A trial court's abuse of discretion in, (a) allowing police officers to testify *** absent verified qualification and, (b) allowing prejudicial photos (etc.) absent proper foundation violates the constitutional guarantee to not be deprived of *** liberty *** without due process, as provided by the 5th & 14th Amendment to the United States Constitution.

6.  A trial court's unreasonable tolling calculations violates the speedy trial guarantee as provided by the 6th & 14th Amendment to the United States Constitution.

(Doc. 1.)  The respondent has filed a Return of Writ (doc. 6), and Taylor has filed a

Traverse (doc. 17).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth a factual and procedural background, which is

excerpted[1] here:

On January 13, 2010, both Taylor and Miller were involved in an automobile collision with Eric Echols and his two passengers.  Echols fled the scene after the accident and brought the matter to the attention of the Lorain Police Department.  The matter ultimately was reviewed by the police department's gang task force, as both Taylor and Miller were believed to be gang members affiliated with the

---

[1]  The court of appeals was resolving a consolidated appeal by Taylor and his co-defendant Bohannon R. Miller.  *State v. Miller*, No. 10CA009922, 2012 WL 1020239, at *1 (Ohio Ct. App. Mar. 26, 2012).  Those matters pertaining solely to Miller will be ignored.

Southside gang in Lorain.  The police received information that Taylor stole the car that was involved in the collision with Echols and that the collision may have been an intentional, retaliatory attack that stemmed from Taylor and Miller's Southside gang membership and Echols' affiliation with the Westside.

On February 19, 2010, a grand jury indicted Taylor on the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(2); (2) participating in a criminal gang, in violation of R.C. 2923.42(A); and (3) receiving stolen property, in violation of R.C. 2913.51(A).  Taylor's felonious assault charge also contained an attendant specification for committing a felony offense of violence while participating in a criminal gang.  Additionally, a fourth charge for participating in a criminal gang, in violation of R.C. 2923.42(A), was added by supplemental indictment on July 1, 2010.  The State later dismissed the count for participating in a criminal gang that was charged in the original indictment.

* * * * * *

Taylor and Miller's cases were joined for trial, and a jury trial began on August 24, 2010.  At the conclusion of the trial, the jury found Taylor guilty of felonious assault, receiving stolen property, and participating in a criminal gang, but not guilty of the specification to count one.  * * * * * The trial court sentenced Taylor to a total of fifteen years in prison . . . .

(Doc. 12, RX 24, at 1-2; State v. Miller, No. 10CA009922, 2012 WL 1020239, at *1

(Ohio Ct. App. Mar. 26, 2012).)

Taylor filed a timely appeal of his conviction, and presented thirteen

assignments of error:

1.  The trial court erred to the detriment of appellant by not ordering a mistrial when an associate of the appellant's who appeared in alleged "gang photographs" with appellant entered the jury room and intimidated the jury and when officers identified appellant as a gang member.

3

2.  The trial court erred to the detriment of appellant by not ruling in favor of appellant's motion to dismiss pursuant to the appellant's right to a speedy trial.

3.  The trial court erred to the detriment of appellant when it allowed the state to proceed with an indictment in which a verdict of guilty could be reached with the jury not being unanimous as to any one set of facts.

4.  The trial court erred to the detriment of appellant by trying him for felonious assault and participating in a criminal gang at the same trial as trying these two charges together was highly prejudicial.

5.  The trial court erred to the detriment of appellant by allowing the introduction of alleged evidence of other acts that were more prejudicial than probative.

6.   The trial court erred to the detriment of appellant by allowing police officers to testify as gang experts even though they were not qualified as experts and had not provided expert reports.

7.  The trial court erred to the detriment of appellant by allowing evidence to be presented without first laying a proper foundation.

8.  The trial court erred to the detriment of appellant by allowing evidence to be presented that was more prejudicial than probative.

9.  The trial court erred to the detriment of appellant by allowing evidence to be presented of a case against appellant which had been dismissed in which appellant was accused of murder.

10.  The trial court erred to the detriment of appellant by allowing the state's gang experts to testify that appellant belonged to a gang rather than letting the jury draw its own conclusions based on evidence presented.

11.  The jury erred to the detriment of appellant when they found appellant guilty of participating in a criminal gang as there was no proof beyond a reasonable doubt that the gang had a primary activity of the crimes listed in R.C. 2923.41(B).

12.  The trial court erred to the detriment of appellant by imposing court appointed attorney fees and court costs against appellant even though appellant was indigent and incarcerated.

13.  The trial court erred to the detriment of appellant by giving erroneous jury instructions as to felonious assault.

(Doc. 12, RX 22.)  The court of appeals affirmed Taylor's criminal conviction on

March 26, 2012.  His twelfth ground was sustained, and remanded for further

proceedings.  (Doc. 12, RX 24; Miller, 2012 WL 1020239, at *29.)

Taylor then filed an appeal to the Supreme Court of Ohio, setting forth six

propositions of law:

1.  A trial court's abuse of discretion in denying a motion for mistrial violates the constitutional guarantee to an impartial jury trial as provided by the 6th Amendment & Article I § 10 of the Ohio Constitution.

2.  A conviction absent the presentation of sufficient evidence and/or beyond a reasonable doubt violates the constitutional guarantee to not be deprived of *** liberty *** without due process, as provided by the 5th & 14th Amendments and Article I § 16 of the Ohio Constitution.

3.  The trial court's allowance of the state to proceed with an indictment that does not provide adequate notice violates the constitutional guarantee to notice of the charges * * *, as provided by the 6th & 14th Amendments and Article I § 10 of the Ohio Constitution.

4.  A trial court's abuse of discretion in allowing evidence of a murder case that was dismissed violates the constitutional guarantee to not be deprived of *** liberty *** without due process, as provided by the 5th & 14th Amendments and Article I § 16 of the Ohio Constitution.

5.  A trial court's abuse of discretion in, (a) allowing police officers to testify *** absent verified qualification and, (b) allowing prejudicial photos (etc.) absent proper foundation violates the constitutional guarantee to not be deprived of *** liberty *** without due process, as

provided by the 5th & 14th Amendments and Article I § 16 of the Ohio
Constitution.

6.  A trial court's unreasonable tolling calculations violates the speedy
trial guarantee as provided by the 6th & 14th Amendments to the U.S.
Constitution, and Article I § 10 of the Ohio Constitution.

(Doc. 12, RX 27.)  On Sept. 5, 2012, the Supreme Court denied leave to appeal, and

dismissed the appeal as not involving any substantial constitutional question.  (Doc.

12, RX 29; State v. Miller, 132 Ohio St.3d 1514, 974 N.E.2d 112 (2012).

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct

> governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Several of the grounds put forward by Taylor allege violations of the Ohio Constitution.  The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Taylor has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th

7

Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  STATE LAW IN FEDERAL HABEAS

The respondent argues that Taylor's first, fourth and fifth habeas claims are barred from review as they simply challenge the discretionary exercise of authority of the state courts.  (Doc. 6, at 16-17.)  A federal court may issue a writ of habeas corpus only if the court finds that a state conviction violates the Constitution, laws, or treaties of the United States.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Habeas relief is not available for errors of state law.  Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010); Estelle, 502 U.S. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  In other words, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Wilson, 131 S.Ct. at 16; Estelle, 502 U.S. at 67-68.

### A.  Alleged Abuse of Discretion

The first, fourth, and fifth grounds of the petition argue that the state trial court abused its discretion in its procedural rulings.  An alleged abuse of discretion by the state trial court is not a constitutional violation.  Stanford v. Parker, 266

8

F.3d 442, 459 (6th Cir. 2001), cert. denied, 537 U.S. 831 (2002) (citing Sinistaj v. Burt, 66 F.3d 804, 808 (6th Cir. 1995)).

The first ground of the habeas petition claims that the trial court abused its discretion in denying his motion for mistrial, which violated the guarantee to an impartial jury as provided by the 6th Amendment to the U.S. Constitution.  On direct appeal, a similar claim was Taylor's first assignment of error:

> The trial court erred to the detriment of appellant by not ordering a mistrial when an associate of the appellant's who appeared in alleged "gang photographs" with appellant entered the jury room and intimidated the jury and when officers identified appellant as a gang member.

(Doc. 12, RX 22, at 9.)  Taylor argued solely that the trial court has misapplied state law; he did not raise any federal (or state, for that matter) constitutional issues.[2] (Doc. 12, RX 22, at 9-11.)  The state court of appeals accordingly addressed the alleged error solely as a matter of state law.  (Doc. 12, RX 24, at 32-34; Miller, 2012 WL 1020239, at *19-*20.)

The fourth ground of the habeas petition is that the trial court abused its discretion by allowing evidence of a previous murder charge which had been

---

[2] Taylor argues that some of his constitutional claims were raised [for the first time] in his appeal to the Supreme Court of Ohio.  *See, e.g.*, doc. 17, at 21.  However, the Supreme Court of Ohio will not consider a constitutional question which was not raised and argued in the lower courts.  *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985); *State v. Phillips*, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

dismissed, which was a federal constitutional due process violation.  On direct

appeal, Taylor's ninth assignment of error was:

> The trial court erred to the detriment of appellant by allowing evidence
> to be presented of a case against appellant which had been dismissed
> in which appellant was accused of murder.

(Doc. 12, RX 22, at 23.)  Again, Taylor argued solely that the trial court had

misapplied state law in its evidentiary rulings; he did not raise any federal

constitutional issues.  (Doc. 12, RX 22, at 23-24.)  The state court of appeals

addressed the alleged error solely as a matter of state law.  (Doc. 12, RX 24, at 14-

17; Miller, 2012 WL 1020239, at *9-*10.)

Finally, the fifth ground of the petition contends that the trial court abused

its discretion by allowing police officers to testify "absent verified qualification" and

by allowing admission of prejudicial photos without proper foundation, in violation

of  federal constitutional due process guarantees.  On direct appeal, Taylor's sixth

and seventh assignments of error were:

> VI.  The trial court erred to the detriment of appellant by allowing
> police officers to testify as gang experts even though they were not
> qualified as experts and had not provided expert reports.
>
> VII.  The trial court erred to the detriment of Taylor by allowing
> evidence to be presented without first laying a proper foundation.

(Doc. 12, RX 22, at 18, 19.)  Taylor's arguments in support of these alleged errors

were once again solely based on state law.  Taylor did not raise any due process or

other federal constitutional issues.  (Doc. 12, RX 22, at 18-22.)  Again, the state

court of appeals addressed the alleged errors solely as a matter of state law.  (Doc. 12, RX 24, at 24-28, 17-22; Miller, 2012 WL 1020239, at *15-*16, *10-*13.)

In summary, Taylor relied entirely on state law when arguing these claims on direct appeal.  (Doc. 12, RX 22, at 9-11, 18-24.)  An alleged abuse of discretion by the state trial court is not a constitutional violation.  Stanford, 266 F.3d at 459 (citing Sinistaj, 66 F.3d at 808).  In particular, the "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court.  Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).  See also Estelle, 502 U.S. at 69-70; Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003).  This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings.  Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  Broom v. Mitchell, 441 F.3d 392, 406 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007).  See also Bugh, 329 F.3d at 512.  Courts have defined the category of errors that are fundamentally unfair very narrowly.  Bugh, 329 F.3d at 512.  Taylor has not made the case that his claim fits within this narrow category.  See generally doc. 17.

11

## B. Res Judicata

Although the first, fourth and fifth grounds were presented to the state courts as state law issues, Taylor now attempts to frame them as federal constitutional violations. This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts. Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001). To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984). Where the petitioner failed to present a federal claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001)).

Because the federal claims were not raised in the state court of appeals, each is barred by the Ohio rule of res judicata. Lott v. Coyle, 261 F.3d 594, 611-612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002); Rust v. Zent, 17 F.3d 155, 160-161 (6th Cir. 1994); State v. Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); State v. Perry, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Res judicata would bar Taylor from litigating any issues which could have been raised on direct appeal, but were not. Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

12

Taylor has failed to properly exhaust his claim by giving the state high court a full and fair opportunity to rule on his constitutional claim.  Rust, 17 F.3d at 160 (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  Taylor cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).  See generally Leroy, 757 F.2d at 99; Adams, 484 F.Supp.2d at 769 (Supreme Court of Ohio will not consider constitutional question not properly raised in lower courts).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)).  Where state court remedies are no  longer available to the petitioner, procedural default and not exhaustion bars habeas review.  Id.  Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred.  Id. at 807.  Taylor has  made no showing of cause and prejudice. See generally doc. 17.

The petition should not be granted on the basis of the first, fourth and fifth grounds, for the reasons discussed above.

13

## IV.  SUFFICIENCY OF THE EVIDENCE

The second ground of the petition is based on insufficiency of the evidence.

The Sixth Circuit has held that a sufficiency of evidence claim should be the first

issue ruled on in a habeas petition.  Russell v. Anderson, No. 1:07CV3434, 2008 WL

4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Joseph v. Coyle, 469 F.3d 441,

453-54 (6th Cir. 2006), cert. denied, 549 U.S. 1280 (2007)).

> Taylor contends that:

> The State failed to provide any witness testimony that described the
> "pattern of criminal gang activity" committed by the alleged gang with
> adequate specificity to satisfy their burden of proof in order to sustain
> a conviction for participating in a criminal gang.  No one established
> that any of the activities required to be proven beyond a reasonable
> doubt was the primary activity of the gang.

(Doc. 1, at [18].)  Taylor raised this argument on direct appeal in his eleventh

assignment of error.  (Doc. 12, RX 22.)

> The state court of appeals addressed his claim at some length, as follows:

> In order to determine whether the evidence before the trial court was
> sufficient to sustain a conviction, this Court must review the evidence
> in a light most favorable to the prosecution.  State v. Jenks, 61 Ohio
> St.3d 259, 273 (1991).

>> An appellate court's function when reviewing the
>> sufficiency of the evidence to support a criminal
>> conviction is to examine the evidence admitted at trial to
>> determine whether such evidence, if believed, would
>> convince the average mind of the defendant's guilt beyond
>> a reasonable doubt.  The relevant inquiry is whether,
>> after viewing the evidence in a light most favorable to the
>> prosecution, any rational trier of fact could have found the
>> essential elements of the crime proven beyond a
>> reasonable doubt.

14

Id. at paragraph two of the syllabus; see also State v. Thompkins, 78
Ohio St.3d 380, 386 (1997).  "In essence, sufficiency is a test of
adequacy." Thompkins, 78 Ohio St.3d at 386.

R.C. 2923.42(A) provides as follows:

> No person who actively participates in a criminal gang,
> with knowledge that the criminal gang engages in or has
> engaged in a pattern of criminal gang activity, shall
> purposely promote, further, or assist any criminal
> conduct, as defined in division (C) of section 2923.41 of
> the Revised Code, or shall purposely commit or engage in
> any act that constitutes criminal conduct, as defined in
> division (C) of section 2923.41 of the Revised Code.

R.C. 2923.41 defines the phrase "criminal gang" as well as "pattern of
criminal gang activity."

> (A) "Criminal gang" means an ongoing formal or informal
> organization, association, or group of three or more
> persons to which all of the following apply:(1) It has as
> one of its primary activities the commission of one or
> more of the offenses listed in division (B) of this section.
> (2) It has a common name or one or more common,
> identifying signs, symbols, or colors.
> (3) The persons in the organization, association, or group
> individually or collectively engage in or have engaged in a
> pattern of criminal gang activity.
>
> (B)(1) "Pattern of criminal gang activity" means, subject
> to division (B)(2) of this section, that persons in the
> criminal gang have committed, attempted to commit,
> conspired to commit, been complicitors in the commission
> of, or solicited, coerced, or intimidated another to commit,
> attempt to commit, conspire to commit, or be in complicity
> in the commission of two or more of any of the following
> offenses:
> (a) A felony or an act committed by a juvenile that would
> be a felony if committed by an adult;
> (b) An offense of violence or an act committed by a
> juvenile that would be an offense of violence if committed
> by an adult;

15

(c) A violation of section 2907.04, 2909.06, 2911.211,
2917.04, 2919.23, or 2919.24 of the Revised Code, section
2921.04 or 2923.16 of the Revised Code, section 2925.03 of
the Revised Code if the offense is trafficking in
marihuana, or section 2927.12 of the Revised Code.

R.C. 2923.41(A)-(B)(1). The statute also defines what constitutes a
"pattern of criminal gang activity." R.C. 2923.41(B)(2). Specifically:

[t]here is a "pattern of criminal gang activity" if all of the
following apply with respect to the offenses that are listed
in division (B)(1)(a), (b), or (c) of this section and that
persons in the criminal gang committed, attempted to
commit, conspired to commit, were in complicity in
committing, or solicited, coerced, or intimidated another
to commit, attempt to commit, conspire to commit, or be
in complicity in committing:(a) At least one of the two or
more offenses is a felony.
(b) At least one of those two or more offenses occurs on or
after January 1, 1999.
(c) The last of those two or more offenses occurs within
five years after at least one of those offenses.
(d) The two or more offenses are committed on separate
occasions or by two or more persons.

R.C. 2923.41(B)(2).

Both Taylor and Miller argue that their convictions are based on
insufficient evidence because the State failed to establish: (1) that the
gang to which they belonged had "as one of its primary activities the
commission of one or more of the offenses listed in [R.C. 2923.41(B) ],"
R.C. 2923.41(A)(1); and (2) that either of them "actively" participated
in the gang. * * * * *[3]

<u>Primary Activity</u>

As set forth above, to be considered a "criminal gang," one of the gang's
primary activities must be the commission of certain enumerated
offenses. R.C. 2923.41(A)(1). The enumerated offenses include
felonies, offenses of violence, and acts that would have been felonies or

---

[3] Those portions of the opinion relating solely to Miller are not quoted here.

16

offenses of violence had the perpetrator not been a juvenile.  R.C. 2923.41(B)(1)(a)(b).  Taylor and Miller argue that the State failed to present any testimony on primary activity.

Officer Mike Gidich testified that he responded to the accident that occurred at W. 18th St. and Garden Avenue and that he notified the detective bureau of the incident because, in his experience with gangs, it was very rare to see "Southside guys" in that area.  He later explained that the area in which the accident occurred was associated with the Westside and a Southside gang member could be putting themselves in jeopardy by being there.  Officer Gidich testified that when the two groups interacted in each other's areas "we've had shootings there in the past over this, from west side to south side and vice versa."

Detective Sivert testified that Lorain experienced an increase in gang violence in the mid- to late 2000s, including assaults and robberies, shootings, stabbings, home invasions, and drug dealing.  He specified that the drug dealing "kind of took over" and "[t]he draw of the money from the gang from drug sales is what really, and today I think is what pushes the gangs mostly."  He then testified that he investigated the Southside gang for the foregoing types of offenses.  He identified a particular assault perpetrated by Southside gang members in April 2007, after which the victim had to be transported by LifeFlight.  He also identified a murder that the police believed had been committed because a particular Southside gang member was selling drugs on Westside gang territory.  According to Detective Sivert, the Lorain Police Department's gang task force began by focusing its resources on the Southside gang because of its violent tendencies and the multiple shootings attributed to its members.

Officer Findish also answered questions about the structure of the Southside gang, indicating that the gang did not have a leader or defined structure because it was a hybrid gang.  Officer Findish testified that a hybrid gang is "basically * * * a bunch of groups coming together, working together to form * * * just for one purpose and usually * * * it's money."  Similarly, Detective Curry testified that the connection between different sets of the Southside gang was that "one of the strong things about gangs it's about making money."

Finally, Samantha Liston testified that she was the owner of the gold Chrysler Concorde that collided with Echols' car on January 13, 2010. Liston testified that the car was stolen from her driveway and she

17

later learned that Taylor had stolen it.  Liston further testified that Taylor offered her drugs in exchange for not reporting the car stolen.

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that the State set forth sufficient evidence to prove that one of the primary activities of the Southside gang and the various sets thereof was to commit both felonies and offenses of violence.  Multiple witnesses testified about the violent tendencies of Southside gang members, including their involvement in robberies, shootings, and murders.  Further, more than one officer testified that such gangs often form in order to make money through various activities, such as selling drugs.  Liston testified that Taylor, in particular, offered her drugs in exchange for her silence.  In light of all of the foregoing, the jury could have concluded that the State set forth sufficient evidence to satisfy R.C. 2923.41(A)(1).  See R.C. 2923.41(A)(1), (B)(1)(a)-(b) (requiring a "criminal gang" to have as one of its primary activities the commission of felonies and/or offenses of violence).

<u>Active Participation</u>

"[T]here is no criminal liability under [R.C.] 2923 .42(A) unless the defendant actively participated in a gang, knew the gang engaged in criminal gang activity, and promoted, furthered, or assisted criminal conduct, or engaged in criminal conduct himself." State v. Hairston, 9th Dist. Nos. 23663 & 23680, 2008–Ohio–891, ¶ 15.  "[T]he common and ordinary meaning of 'actively participates in a criminal gang' is involvement with a criminal gang that is more than nominal or passive." State v. Stallings, 150 Ohio App.3d 5, 2002–Ohio–5942, ¶ 16 (9th Dist.).  This Court has previously determined that sufficient evidence of active participation existed where a defendant's residence had a number of graffiti markings denoting the gang at issue and the defendant previously had been arrested at a drug house at the same time as a known gang member.  Hairston at ¶ 16–17.

Officer Gidich testified that both Taylor and Miller are from the South side of town and that he referred the January 13, 2010 collision in which Taylor, Miller, and Echols were involved to the detective bureau because he believed it was gang-related.  Detective Sivert also testified that Taylor and Miller were from the South side of Lorain and both were detained on April 1, 2007, along with Corey Patfield Briggs, Timothy Merritt, Antwain Blake, and Billy Gilbert, in connection with an assault that occurred at a nightclub there.  Taylor and Miller both

were convicted of aggravated rioting as a result of the incident. Detective Sivert stated that all of the other individuals detained for the April 2007 incident along with Taylor and Miller were from the South side.

Through Detective Sivert and Lieutenant Super II, the State also introduced numerous photographs of the tattoos Taylor and Miller had on their bodies. Detective Sivert testified that Taylor had a tattoo of "Hard" on his right arm and "Body" on his left, as well as "GMB" on his stomach. He explained that Hardbodies is a set of the Southside gang as is "GMB," which stands for "Get Money Boys." Detective Sivert also testified that Miller had tattoos depicting "Hardbodies" and "Get Money Boys" across his chest and stomach. Further, he testified that Miller had a "Campito" tattoo on his hand and that Campito "is a gang associated with the South Lorain gang." Detective Sivert stated that Taylor, Miller, Blake, and Gilbert all had Hardbodies tattoos.

Other photographs the State introduced depict both Taylor and Miller either displaying gang signs themselves or standing alongside other individuals displaying gang signs. Lieutenant Super II testified that several of the other individuals in the photographs are suspected gang members. Moreover, Officer Findish was able to identify the gang signs being portrayed in the photographs and testified that, based on his experience, both Taylor and Miller's behavior was consistent with that of gang membership.

Once again viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State set forth sufficient evidence to show that both Taylor and Miller actively participated in a criminal gang. See R.C. 2923.42(A). Both had numerous gang-related tattoos, were photographed either displaying gang signs or alongside other individuals displaying gang signs, and had prior convictions after they were arrested along with several other suspected gang members. See Hairston, 2008–Ohio–891, at ¶ 16–17 (concluding that the State presented sufficient evidence of active participation in a gang where the defendant had graffiti markings of the gang in his home and was previously arrested at the same time of a known gang member). See also McCraney, 2010–Ohio–6128, at ¶ 27–30 (agreeing that the State set forth sufficient evidence of active participation, in part, because the appellant had a MySpace webpage that depicted numerous gang-related photographs). Taylor and Miller's argument that the State failed to set forth sufficient evidence of active participation lacks merit.

\* \* \* \* \* \*

Taylor and Miller's arguments that the State failed to present
sufficient evidence here lack merit.  Accordingly, Taylor's eleventh
assignment of error and Miller's first assignment of error are
overruled.

(Doc. 12, RX 24, at 37-43, 44; Miller, 2012 WL 1020239, at \*22-\*27.)

The state court relied on State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991) (syllabus, ¶ 2), and State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d

541, 546 (1997), which followed the sufficiency of evidence standard set forth in

Jackson v. Virginia, 443 U.S. 307 (1979).  (Doc. 12, RX 24, at 37; Miller, 2012 WL

1020239, at \*22.)  Thus, the issue is whether the state court decision was an

"unreasonable application" of clearly established federal law; in other words,

whether the state court identified the correct governing legal principle from

Supreme Court decisions, but unreasonably applied that principle to the facts of

Taylor's case.  Williams, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is

reviewed by determining whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Bagby

v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).

As noted above, this was the standard applied by the state appellate court.  (Doc.12,

RX 24, at 37; Miller, 2012 WL 1020239, at \*22.)  Thus, the state court identified the

correct governing legal principle from Jackson v. Virginia.

20

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence, but rather examines whether the trial court made a rational decision to convict or acquit.  Russell, 2008 WL 4534144, at *3 (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not "substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses."  Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).  It is the province of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts.  See, e.g., McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003) cert. denied, 540 U.S. 1158 (2004).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime.  Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).  The state court opinion set forth the elements of the crime, discusses Taylor's challenge to two of the elements, and recounts the evidence which would support a conviction on those elements.

21

Taylor contends that the evidence at trial did not prove "anything other than that Petitioner was present and/or (at best) acquainted with alleged gang members." (Doc. 17, at 6.)  He also claims that there was no specific testimony from a victim of any crime, nor specific testimony that he was a gang member.  Id. at 7. Taylor's arguments on direct appeal were somewhat different, therefore the state court of appeals did not reach these specific issues.  See generally doc. 12, RX 22, at 25-27.  Nonetheless, the court notes that there was testimony which would support a finding of active participation.  See doc. 12, RX 24, at 1-2, 42-43; Miller, 2012 WL 1020239, at *1, *25-*26.)

The state court found that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Taylor has failed to establish that the state court's rulings concerning this claim involved an unreasonable application of clearly established federal law as set forth in Jackson.  The petition should not be granted on the basis of the second ground.

## V.  INDICTMENT

The third ground of the petition alleges that the trial court improperly allowed the case to proceed under an indictment which did not provide adequate notice, in violation of the due process guarantees of the Constitution.  Taylor argues that the felonious assault count, as stated in the indictment, could have allowed the

jury to "find [him] guilty without being unanimous as to the set of facts for which

[he] was being charged."  (Doc. 1, at [18].)  Taylor states that, based on the facts of

the case, the felonious assault count could have been split into three separate

counts.  Id.

Taylor presented this claim to the state court of appeals as his third

assignment of error.  On appeal, he relied for the most part on state law, but did

invoke the Sixth Amendment, citing case law that the prohibition against

"duplicity" was intended to protect his right to notice of the charges against him,

and to prevent confusion as to the basis of the verdict.  (Doc. 12, RX 22, at 15, citing

State v. Smith, No. 8869, 1978 WL 215411, at *1 (Ohio Ct. App. Oct. 4, 1978), and

United States v. Tanner, 471 F.2d 128, 139 (7th Cir. 1972).)

The state court of appeals rejected this claim, as follows:

In his third assignment of error, Taylor argues that his indictment was
defective as a matter of law because it was duplicitous.  Specifically, he
argues that he did not have adequate notice of the charge against him
and that the indictment compromised his right to a unanimous verdict.
We disagree.

This Court recently addressed the issue of duplicity and explained as
follows:

Pursuant to Crim.R. 8(A), each offense must be separately
delineated in the indictment.  An indictment is
duplicitous when two or more separate offenses are joined
in one count.  The prohibition against duplicity is geared
to protect the accused's Sixth Amendment right to notice
of the nature of the charge against him and prevent
confusion as to the basis of the verdict.  A criminal
defendant is entitled to a unanimous jury verdict.  If two
distinct offenses are presented in a single charge,

23

however, unanimity may be compromised.  That is, if two
offenses are joined in a single count, while the jury may
agree that the defendant is guilty of that count, they may
have not unanimously decided which set of facts resulted
in the offense.  If the trial court finds that the indictment
is duplicitous, the indictment shall not be quashed, set
aside or dismissed.  Instead, the trial court may sever the
indictment into separate indictments or separate counts.

(Internal quotations and citations omitted.) State v. Ward, 9th Dist.
No. 09CA009720, 2011–Ohio–518, ¶ 5.  "[A] count is not duplicitous
which charges the commission of the offense conjunctively in two ways,
provided there is no repugnancy between the ways charged." State v.
Geckler, 9th Dist. No. 20884, 2002–Ohio–5031, ¶ 22, quoting State v.
Daniels, 169 Ohio St. 87, 103 (1959).

Taylor avers that his felonious assault count was duplicitous because
he did not have adequate notice of the conduct underlying that charge
and it was not clear enough to ensure the jury reached a unanimous
verdict.  Taylor challenged the indictment below on the same basis.  In
response, the State identified the victim in this case as Echols and
Taylor's continuous course of conduct against him on January 13,
2010, as the basis for the charge.  The State further specified the
following three specific acts as the alternative theories for the felonious
assault charge, all three of which occurred during the continuous
course of conduct: (1) the initial traffic collision that occurred outside
the Long Avenue Market at W. 18th Street and Long Avenue; (2) the
second traffic collision that occurred at W. 18th Street and Garden
Avenue; and (3) the alleged crowbar attack that took place after the
vehicles came to rest at W. 18th Street and Garden Avenue.  Taylor's
counsel indicated that the State's explanation "solve[d] the problem" so
long as the court gave the jury a unanimity instruction.  The court
gave the following unanimity instruction:

Unanimity.  Multiple acts cases are those where several
acts are alleged, and any of those acts could constitute the
crime charged.  In those cases, the jury must unanimously
agree on which act constituted the crime.  In this case, the
jury must agree that the same act was proven beyond a
reasonable doubt by all 12 jurors.

Example in this case.  You've heard in the arguments of
counsel that there ha[s] been talk of the first automobile

24

collision outside of the Long Avenue Market; a second collision on Garden and 18th; and then the wielding of some type of instrument that's been referred to as a crowbar or a tire iron or something.  Those are three separate events and have been argued as one course of continuous conduct or each separately could be looked at as a potential felonious assault.

I give you this example because if you went back in the jury room, for example, and six of you agreed that the first collision was a felonious assault, but six others said no, or one other said no, and 11 others said yes, it was, and then a different group on the second collision said well, we think, six or seven of us think that this was a felonious assault but the other members do not, you cannot say well, over all we had, you know, we had seven people here and five people on the other one.  It can't be that way.  You have to all agree that one event was a felonious assault, and you might agree that all three individual items constitute a felonious assault, or none of them constitute a felonious assault, but it must be unanimous with respect to each particular event.

Additionally, the State provided Taylor with a bill of particulars, outlining its continuous course of conduct theory on the felonious assault charge.

The indictment here was not duplicitous simply because it contained a count that charged the commission of the offense in the conjunctive. Daniels, 169 Ohio St. at 103.  The State's theories were not inconsistent, and the trial court gave the jury a detailed unanimity instruction.  The State also provided Taylor with its continuous course of conduct theory well before trial.  Indeed, Taylor's own counsel indicated that the State's explanation of the charge solved the duplicity problem so long as the court included a unanimity instruction.  The record does not support Taylor's assertion that he did not have adequate notice of the charges here or that the jury did not reach a unanimous verdict due to a defect in his indictment.  Taylor's third assignment of error is overruled.

(Doc. 12, RX 24, at 11-13; Miller, 2012 WL 1020239, at *7-*8.)

The state court of appeals determination was not based on any decision of the
U.S. Supreme Court, thus the question for this habeas court is whether the state
court's decision was contrary to clearly established federal law as set forth by the
Supreme Court.  A state court decision is "contrary to" clearly established Supreme
Court precedent "if the state court applies a rule that contradicts the governing law
set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  The respondent
directs the court to United States v. Kakos, 483 F.3d 441, 443-444 (6th Cir. 2007),
doc. 6, at 28, while the petitioner (on appeal) cited Ohio law as well as the Seventh
Circuit's decision in Tanner, 471 F.2d 128, 139, for the guiding legal principles.

The Supreme Court has repeatedly stated that the AEDPA prohibits federal
habeas courts from relying on precedent from the federal courts of appeals to
conclude that a particular constitutional principle is "clearly established."  See, e.g.,
Lopez v. Smith, ___ S.Ct. ___, 2014 WL 4956764, at *1 (Oct. 6, 2014).  The
petitioner must demonstrate Supreme Court case law which clearly establishes the
legal proposition needed to grant habeas relief.  Lopez, ___ S.Ct. ___, 2014 WL
4956764, at *3.  The Court recently re-affirmed that circuit court precedent cannot
"refine or sharpen a general principle of Supreme Court jurisprudence into a
specific legal rule that this Court has not announced."  Lopez, ___ S.Ct. ___, 2014
WL 4956764, at *3.

The discussion of duplicity in Tanner, an appeal of a federal criminal
conviction, concerned the prohibition of duplicitous counts embodied in Rule 8(a) of

26

the Federal Rules of Criminal Procedure, Tanner, 471 F.2d at 138-139, although the court noted that the prohibition against duplicity was "designed to protect a defendant's right under the Sixth Amendment to notice of the 'nature and cause of the accusation' against him so that he may prepare a defense, and to guard against the possibility that 'confusion as to the basis of the verdict may subject the defendant to double jeopardy in the event of a subsequent prosecution.'" Tanner, 471 F.2d at 139 (internal citation omitted).

In Kakos, another federal criminal case, the Sixth Circuit noted that, "[w]hile a duplicative indictment can prejudice a defendant in a variety of ways, the primary concern is that a defendant may be deprived of his right to a unanimous jury verdict." Kakos, 483 F.3d at 443. The court also noted double jeopardy concerns. Id. at 443-444. The relevant discussion concerning the indictment in that case included the following:

> Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be made before trial. Yet while a defendant waives technical errors to an indictment by his failure to object to the duplicity before trial, the alleged harm to the defendant's substantive rights resulting from a duplicitous indictment can be raised at trial or on appeal, notwithstanding the defendant's failure to make a pretrial motion. United States v. Adesida, 129 F.3d 846, 849 (6th Cir.1997). The rationale for this distinction is that, whereas Rule 12 applies only to defects in the institution of criminal proceedings, see Davis v. United States, 411 U.S. 233, 241, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), a verdict rendered by a less-than-unanimous jury violates a defendant's Sixth Amendment rights by a harm that arises from the trial itself. See Johnson v. Louisiana, 406 U.S. 356, 369, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (Powell, J. concurring) ("In an unbroken line of cases reaching back into the late 1800's, the Justices of this Court have recognized, virtually without

27

> dissent, that unanimity is one of the indispensable features of federal
> jury trial.")

Kakos, 483 F.3d at 444.  Needless to say, the petition before this court concerns a

state criminal conviction, not a federal jury trial.

It is also noteworthy that the Sixth Circuit in Kakos quoted a concurring

opinion in Johnson v. Louisiana, which concerned a state court jury verdict, not an

indictment.  The Court's actual opinion in Johnson states:

> We note at the outset that this Court has never held jury unanimity to
> be a requisite of due process of law.  Indeed, the Court has more than
> once expressly said that '(i)n criminal cases due process of law is not
> denied by a state law . . . which dispenses with the necessity of a jury
> of twelve, or unanimity in the verdict.'

Johnson v. Louisiana, 406 U.S. 356, 359 (1972).  The Court went on to find that "as

to the nine jurors who voted to convict, the State satisfied its burden of proving

guilt beyond any reasonable doubt."  Johnson, 406 U.S. at 362.  The Court rejected

the theory that the vote of the other three jurors for acquittal impeached the verdict

of the other nine and demonstrated that guilt was not in fact proved beyond such

doubt.  Id.  In any event, Johnson concerned a jury verdict, not an indictment, and

does not provide clear support for the legal proposition that there is a constitutional

prohibition of "duplicity" in a state indictment.

The U.S. Supreme Court has stated that, generally, "the sufficiency of an

indictment cannot be reviewed in habeas corpus proceedings."  Knewel v. Egan, 268

U.S. 442, 446 (1925).  The Fifth Amendment right to a grand jury indictment has

never been found to be incorporated against the states.  Williams v. Haviland, 467

28

F.3d 527, 531-532 (6th Cir. 2006) (citing cases) (Supreme Court has repeatedly asserted that Grand Jury Clause does not apply to states).

The primary Constitutional issue is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations.  Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003); Blake v. Morford, 563 F.2d 248, 250 (6th Cir. 1977), cert. denied, 434 U.S. 1038 (1978).  See also Cole v. Arkansas, 333 U.S. 196, 201 (1948); Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003).  The second Constitutional concern which may arise from a state court indictment is the Double Jeopardy concern "that the record shows with accuracy to what extent [a defendant] may plead a former acquittal or conviction," Russell v. United States, 369 U.S. 749, 764 (1962).

"Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding."  Roe, 316 F.3d at 570 (quoting Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)).

As Russell pointed out, the Sixth Amendment provides that, in all criminal prosecutions, "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation" against him.  Russell, 369 U.S. at 761.  The Supreme Court has found that "notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  Cole, 333

29

U.S. at 201; see also Gray v. Netherland, 518 U.S. 152, 167-168 (1996) (defendant's right to notice of charges against him is well established); Coles v. Smith, No. 1:10CV0525, 2013 WL 474706, at *7 (N.D. Ohio Feb. 7, 2013), aff'd, No. 13-3280 (6th Cir. Aug. 20, 2014).  The concern for this federal habeas court, then, is essentially a due process issue grounded in the Sixth Amendment.  Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir. 1992); Goodloe v. Parratt, 605 F.2d 1041, 1045 (8th Cir. 1979).

Fair notice has been given when the charged offense is "described with some precision and certainty so as to apprise the accused of the crime with which he stands charged."  Williams v. Haviland, 467 F.3d at 535.  Where the defendant was fairly informed of the charges, and had sufficient information to be able to admit or deny the charges and to adequately prepare any defense that was available to him, there will be no federal due process violation.

The respondent contends that Taylor had reasonable notice of the charges in Count One, "and can demonstrate no prejudice or lack of a fair trial . . . given the defense knowledge of the State's continuing conduct theory prior to trial through discovery, the State's explicit clarification of the continuing conduct theory for Count One prior to trial, the defense concession at the pretrial motion hearing that a unanimity charge would be required on the issue, and the trial court provided the unanimity charge to the jury." (Doc. 6, at 31.)  The respondent argues that the state court adjudication was not contrary to federal law.  Id. at 32.

30

Taylor responds by pointing out that the prohibition against duplicity is meant to protect a defendant's Sixth Amendment right to notice of the charges against him.  (Doc. 17, at 11, citing Tanner, 471 F.2d at 139, and Sanabria v. United States, 437 U.S. 54 (1978).)  He also notes the Johnson case cited by respondent (discussed above).

The court notes, first of all, that the third ground of the petition attacks the indictment, not the jury's verdict, thus Johnson does not support the third ground.  In Sanabria, an appeal of a federal criminal conviction, the Supreme Court stated that:

> The precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, "in case any other proceedings are taken against [the defendant] for a similar offence, . . . the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction."

Sanabria, 437 U.S. at 65-66 (quoting Cochran v. United States, 157 U.S. 286, 290 (1895).)  This raises the Double Jeopardy concern mentioned earlier.

The Sixth Circuit has implied that alleged due process problems in an indictment can be cured where the prosecution delineates the factual bases for the allegations "either before or during the trial."  Valentine v. Konteh, 395 F.3d 626, 634, 638 (6th Cir. 2005).  The record as recited by the state court of appeals demonstrates that Taylor had knowledge of the charges against him.

Although the third ground challenges the indictment, not the jury instructions, the court notes that the trial court's instructions to the jury required

31

them to reach unanimity with respect to each particular event constituting felonious assault.  See generally Wiborg v. United States, 163 U.S. 632, 648 (1896) (inclusion of more than one offense in same count of indictment is not ground for disturbing verdict if jury  properly instructed); United States v. Saleh,  875 F.2d 535, 538 (6th Cir. 1989) (rule prohibiting duplicity designed to preclude jury from convicting under a single count which charges more than one offense without agreeing, unanimously, on defendant's guilt of same offense).  The jury is presumed to have followed the court's instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).

The state court's finding that "[t]he record does not support Taylor's assertion that he did not have adequate notice of the charges here or that the jury did not reach a unanimous verdict due to a defect in his indictment" does not appear to offend federal law, and Taylor does not point to any Supreme Court holding to the contrary.  See generally doc. 17, at 11-13.

Taylor has failed to establish that the state court's rulings concerning this claim were contrary to clearly established federal law.  The petition should not be granted on the basis of the third ground.

## VI.  SPEEDY TRIAL

The sixth ground of the petition alleges that the trial court's "unreasonable tolling calculations" resulted in a violation of the Constitution's speedy trial

32

guarantee.  This claim was raised on direct appeal as Taylor's second assignment of error: "The trial court erred to the detriment of appellant by not ruling in favor of appellant's motion to dismiss pursuant to the appellant's right to a speedy trial."

On direct appeal, Taylor argued that his statutory right to a speedy trial under Ohio Rev. Code § 2945.71 was violated, in particular because the trial court improperly applied tolling.  (Doc. 12, RX 22, at 11-14.)  The state court of appeals ruled on this claim as follows:

> "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the state of Ohio."  State v. Pachay, 64 Ohio St.2d 218, 219 (1980).  Ohio's speedy trial statute provides that a person charged with a felony must be brought to trial within two hundred seventy days of his arrest.  R.C. 2945.71(C)(2). Yet, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  R.C. 2945.71(E). Accordingly, if a person charged with a felony remains in jail in lieu of posting bond, that person must be brought to trial within ninety days of his arrest.  Id.  "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."  R.C. 2945.73(B).  Under certain conditions, however, the time within which an accused must be brought to trial can be tolled.  State v. Dalton, 9th Dist. No. 09CA009589, 2009–Ohio–6910, ¶ 21.  Speedy trial time can be tolled for "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused."  R.C. 2945.72(E).  Additionally, speedy trial time can be tolled for "[a]ny period of delay necessitated by the accused's lack of counsel," "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  R.C. 2945.72(C), (H).
>
> Taylor was arrested on January 13, 2010, so his speedy trial time began to run on January 14, 2010.  See State v. Browand, 9th Dist. No. 06CA009053, 2007–Ohio–4342, ¶ 12 ("Time is calculated to run the day after the date of arrest.").  He posted bond and was released on

January 21, 2010; a total of 24 days later for speedy trial purposes. See R.C. 2945.71(E) (setting forth the speedy trial triple-count provision).  He was then arrested again 32 days later on February 22, 2010, after the filing of his indictment.  At that point, a total of 56 days had elapsed.  Because Taylor remained in jail from that point forward, R.C. 2945.71's triple-count provision applied to the remainder of his time calculations absent some tolling event.  R.C. 2945.71(E).

On March 5, 2010, Taylor appeared before the court without counsel. The court issued an entry charging Taylor with a one-day delay and indicating that counsel would be appointed.  Subsequently, on March 17, 2010, Taylor's appointed counsel filed a motion for a bond reduction as well as a request for discovery and a bill of particulars.  Those filings stopped Taylor's speedy trial clock as they constituted tolling events.  State v. Brown, 98 Ohio St.3d 121, 2002–Ohio–7040, syllabus. The speedy trial time that elapsed from February 23, 2010, to March 17, 2010, (minus the tolling event) was 66 days.  As of March 17, 2010, therefore, 122 days had elapsed.

The court denied Taylor's bond reduction request on April 23, 2010, and the State provided Taylor with both discovery and a bill of particulars on June 3, 2010.  Taylor argues on appeal that the court's delay in ruling upon his bond reduction request was excessive and amounted to an unreasonable tolling event.  He does not argue, however, that the State unreasonably delayed in responding to his request for discovery or bill of particulars.  Moreover, the record does not support any implication that the State's delay here was due to procrastination or inattention.  See Brown at ¶ 24, quoting State v. Ladd, 56 Ohio St.2d 197, 200 (1978) ("The rationale supporting [the speedy-trial statute] was to prevent inexcusable delays caused by indolence within the judicial system.") (Alteration sic.) The prosecutor indicated that his office was struggling to provide discovery and a bill of particulars here, as Taylor had been indicted along with 29 others. There also was a great deal of discussion in the court below about R.C. 2923.42's application because neither the court nor the attorneys were familiar with the gang statute.  In the absence of any argument on Taylor's part, we will not conclude that the State's delay in responding to Taylor's demand for discovery and a bill of particulars was unreasonable.  See App.R. 16(A)(7).  The speedy trial clock was tolled from March 17, 2010, to June 3, 2010, the date when the State responded to Taylor's demands.  See Brown at ¶ 26.  The issue of whether the trial court unreasonably delayed in responding to the bond reduction is moot, as that time overlapped with the time tolled as

34

a result of Taylor's filing his demands for discovery and a bill of particulars.  From March 17, 2010, to June 3, 2010, Taylor's speedy trial time was tolled and the speedy trial count remained at 122 days having elapsed.

On June 9, 2010, Taylor filed a motion to dismiss his indictment, arguing that it was defective.  The motion to dismiss constituted another tolling event.  State v. Daniels, 9th Dist. No. 08CA009488, 2009–Ohio–1712, ¶ 13.  From June 3, 2010, to June 9, 2010, 21 days elapsed for speedy trial purposes.  The trial court then denied the motion on June 30, 2010, and restarted the speedy trial clock.  The total time elapsed as of June 30, 2010, was 143 days.

On July 7, 2010, Taylor filed a pro se motion to reduce his bond, which the court denied on July 15, 2010.  That motion also acted as a tolling event.  State v. Szorady, 9th Dist. No. 02CA008159, 2003–Ohio–2716, ¶ 14 (holding that defendant's pro se motion to dismiss was a tolling event).  Thereafter, no tolling events occurred until August 2, 2010, when Taylor's counsel asked the court to continue the trial until August 24, 2010, so that the defense would have time to obtain an expert report from their accident reconstructionist.  See R.C. 2945.72(H) (identifying as a tolling event any "period of continuance granted on the accused's own motion").  The speedy trial time that elapsed from June 30, 2010, to July 7, 2010, combined with the time that elapsed from July 15, 2010, to August 2, 2010, was 81 days.  The total speedy trial time that elapsed from Taylor's arrest until his trial was 224 days, well under the 270 days within which the State was required to bring Taylor to trial.  See R.C. 2945.71(C)(2).

In addition to the argument outlined above, Taylor argues that the trial court erred by denying his motion to dismiss because it factored the three days it took him to respond to the State's demand for discovery into its count.  Taylor argues that because he responded within a reasonable time, it was improper to count that response time as a tolling event.  Any error the court committed with regard to that event was harmless, however, as the foregoing calculations indicate that the State brought Taylor to trial well within his speedy trial time and those calculations did not rely upon Taylor's response time as a tolling event.  See Crim.R. 52(A).

Lastly, Taylor argues his motion to dismiss had merit because his speedy trial time had already elapsed when the State filed its supplemental indictment.  The State filed its supplemental indictment

here on July 1, 2010.  The supplemental indictment did not set forth
any additional charges based on different circumstances.  Rather, it
clarified count two of the original indictment (participating in a
criminal gang) in response to Taylor's assertion that the indictment
was defective.  The State later dismissed the original count in favor of
the more specific language contained in the supplemental indictment.
Because the supplemental indictment arose from the same facts and
did not charge an additional offense, it was subject to the same speedy
trial period applicable to the original indictment.  State v. Baker, 78
Ohio St.3d 108, 110–111 (1997).  Further, because Taylor's speedy trial
time did not elapse here, his argument that the court erred by not
dismissing the supplemental indictment is meritless.  Taylor's second
assignment of error is overruled.

(Doc. 12, RX 24, at 3-7; Miller, 2012 WL 1020239, at *2-*4.)

While recognizing the (federal) constitutional right to a speedy trial, doc. 12,

RX 24, at 3; Miller, 2012 WL 1020239, at *2, the state court relied solely on state

law in its decision.  Thus, the question for this court is whether the state court's

decision was contrary to clearly established federal law as set forth by the Supreme

Court.  As noted earlier, a state court decision is "contrary to" clearly established

Supreme Court precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.

An alleged violation of a state speedy trial law is not remediable through a

federal habeas corpus petition.  Norris v. Schotten, 146 F.3d 314, 328 (6th Cir.),

cert. denied, 525 U.S. 935 (1998); Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994),

cert. denied, 514 U.S. 1024 (1995); Massenburg v. Pitcher, No. 00-10503, 2003 WL

88118, at * 8 (E.D. Mich. Jan. 10, 2003) (citing Norris).  Such a claim arises under

state law and is not cognizable on federal habeas review.  Massenburg, 2003 WL

36

88118, at * 8 (citing Lewis, 497 U.S. at 780). To the extent that the claim relies on a violation of the Ohio speedy-trial statutes, it should not be granted.

Rather, Taylor must establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. Danks v. Davis, 355 F.3d 1005, 1008 (7th Cir.), cert. denied, 542 U.S. 943 (2004); Wilson v. Mitchell, No. 02-3834, 2003 WL 1194257, at *2 (6th Cir. Mar. 7, 2003); Poe, 39 F.3d at 207; Massenburg, 2003 WL 88118, at * 8. The court's consideration of a claim that Ohio has violated its speedy trial rules is limited to a determination of whether the state's action has violated the petitioner's Sixth Amendment right to a speedy trial. Poe, 39 F.3d at 207; Massenburg, 2003 WL 88118, at * 8.

The Sixth Amendment to the U.S. Constitution guarantees the accused a speedy trial in all criminal prosecutions. The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515 (1972). The Supreme Court said that the states "are free to prescribe a reasonable period consistent with constitutional standards." Id. at 523.

The Barker Court set out four criteria by which an alleged violation of the constitutional right to a speedy trial is to be judged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Barker, 407 U.S. at 530; Norris, 146 F.3d at 326. None

37

of the four factors is either necessary or sufficient to finding a deprivation of the right to a speedy trial, but must be balanced with other relevant circumstances.  Id. at 533.

In a subsequent decision, Doggett v. United States, the balance was described as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  Doggett v. United States, 505 U.S. 647, 651 (1992).

The Ohio Court of Appeals did not explicitly undertake the four-part analysis set forth in Barker.  Where a state court decides a constitutional issue without extended discussion, the federal habeas court should focus on the result of the state court's decision, applying the correct standard in its analysis.  Harris v. Stovall, 212 F.3d 940, 943 n.1 (6th Cir. 2000), cert. denied, 532 U.S. 947 (2001).

The Barker Court noted that the first factor is "a triggering mechanism," instructing that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Barker, 407 U.S. at 530; Maples v. Stegall, 427 F.3d 1020, 1025 (6th Cir. 2005); Norris, 146 F.3d at 326.  Thus, the first inquiry is "whether there was a presumptively prejudicial delay" to warrant further investigation of the Barker factors.  Norris, 146 F.3d at 326-327.

38

The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier.  Maples, 427 F.3d at 1026 (citing United States v. Marion, 404 U.S. 307, 320 (1971)); Redd v. Sowders, 809 F.2d 1266, 1269 (6th Cir. 1987); United States v. Roberts, 548 F.2d 665, 667 (6th Cir.), cert. denied, 431 U.S. 920 (1977) (citing Dillingham v. United States, 423 U.S. 64 (1975) (per curiam)).  A delay is presumptively prejudicial if it is "uncommonly long" or "extraordinary."  United States v. Watford, 468 F.3d 891, 901 (6th Cir. 2006), cert. denied, 550 U.S. 970 (2007) (citing Doggett, 505 U.S. at 651-652, and other cases).  A delay approaching one year may be considered presumptively prejudicial, depending on the nature and seriousness of the charges.  Doggett, 505 U.S. at 652 n.1.  The Sixth Circuit has found that a delay is presumed prejudicial when it exceeds one year.   United States v. Young, 657 F.3d 408, 414 (6th Cir. 2011), cert. denied, 132 S.Ct. 1647 (2012); Watford, 468 F.3d at  901 (citing cases).

Taylor was arrested on January 13, 2010, and his trial did not commence until August 24, 2010, eight months later.  (Doc. 12, RX 24, at 4, 6; Miller, 2012 WL 1020239, at *2-*3.)  Such a delay is not presumptively prejudicial.

The state court found no speedy trial violation under state law.  (Doc. 12, RX 24, at 6-7; Miller, 2012 WL 1020239, at *3-*4.)  This court finds no constitutional violation in the delay of 8 months between Taylor's arrest and the commencement of his trial.  See, e.g., Young, 657 F.3d at 414; Watford, 468 F.3d at 901.  Because there is no delay which is uncommonly long or presumptively prejudicial, there is

39

no necessity for inquiry into the other speedy-trial factors.  Barker, 407 U.S. at 530;

Maples, 427 F.3d at 1025-1026.  This court finds no constitutional speedy trial

violation, and the petition should not be granted on the basis of the sixth ground.

Taylor has failed to establish that the state court decision was contrary to clearly

established federal law.


## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   Oct. 22, 2014              /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with

the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file

objections within the specified time WAIVES the right to appeal the District Court's

order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d

947 (6th Cir. 1981).

40